## PROVIDENCE COAL MIN. CO. v. LUCAS, Collector of Internal Revenue.

District Court, W. D. Kentucky, at Louisville. Feb. 6, 1930.

Cox & Wells, of Louisville, Ky., for plaintiff.

T. J. Sparks, U. S. Atty., and Frank A. Ropke, Asst. U. S. Atty., both of Louisville, Ky., and C. M. Charest, Gen. Counsel Bureau of Internal Revenue, and John H. Pigg, Sp. Atty. Bureau of Internal Revenue, both of Washington, D. C., for defendant.

DAWSON, District Judge.

This is a suit to recover income and profits taxes for the calendar year 1920. The parties, by written stipulation, waived a jury, and the case was tried by the court on the pleadings, exhibits, a written stipulation of facts, and the testimony of the witness, Barrow, offered in behalf of the plaintiff.

On December 6, 1929, the plaintiff in open court withdrew all of its claims asserted in the amended and reformed petition except the one claim that, in arriving at its net income for the year 1920, it was entitled to a deduction of $4,500, paid by it on the 16th day of March, 1923, in compromise and satisfaction of a $9,000 judgment rendered against it in the circuit court of Webster county, Ky., on April 22, 1922, and in favor of D. H. Cullen, because of the wrongful removal, by the plaintiff, of the coal under an acre graveyard belonging to said Cullen.

Briefly stated, the material facts are as follows:

The Providence Coal Mining Company, during the calendar year 1920, and for several years prior thereto, was, and at all times since then has been, and now is, a corporation under the laws of Kentucky, engaged in operating a coal mine in Webster county, Ky., under the ordinary coal lease common in that section of the state. Within its leasehold boundary was a graveyard of one acre, which, together with the coal thereunder, belonged to D. H. Cullen. The plaintiff had no right under its lease, or under any other instrument, to mine the coal under this one-acre

tract. During the years 1919 and 1920, in the prosecution of its mining work, the plaintiff mined a total of 4,900.89 tons of coal from under the graveyard tract. 1,421.26 tons of this amount were mined in the calendar year 1919, and 3,479.63 tons, or seventy-one per cent. of the total, were mined in 1920. It appears from the record that the plaintiff did not realize that it had mined the coal under the graveyard tract, until some time in the year 1921. In December, 1921, Cullen filed suit against the plaintiff, Providence Coal Mining Company, in the circuit court of Webster county, Ky., charging that the coal had been knowingly, willfully, and without right removed by the Providence Coal Mining Company. He asked for a judgment in the sum of $25,000, the alleged value of the coal taken; in the sum of $2,000 for alleged damage to the surface of the graveyard; and for $5,000 punitive damages. Before the case was tried, however, Cullen abandoned all of his claim except for $25,000, the value of the coal removed.

The record of that case, in so far as it has been filed in this action, discloses that the Providence Coal Mining Company admitted the wrongful removal of the coal. Judging by the instructions given in that case, the sole issue submitted to the jury was whether the coal had been knowingly and willfully removed, or had been removed as the result of an honest mistake. The question of fact thus submitted was important only in determining whether plaintiff was entitled to recover the full market value of the coal after it had been mined, or merely the usual and customary royalty on the coal mined. On April 22, 1922, the jury returned a verdict in Cullen's favor for the sum of $9,000, and on the same day judgment was entered on the verdict. Thereafter an appeal was prosecuted to the Court of Appeals, and on the 16th day of March, 1923, while the case was pending in the Court of Appeals, the parties entered into a written contract of settlement by the terms of which the Providence Coal Mining Company paid Cullen $4,500 in full settlement of that judgment.

The plaintiff keeps its books and makes its returns for income and profits tax purposes on an accrual basis, and on that basis it made its income tax return for the calendar year 1920, the return being filed on March 15, 1921. During the calendar year 1920 no reserve was set up on the books to pay any liability incurred because of the removal of coal under the Cullen graveyard, and, of course, the return filed March 15, 1921, showed no deduction of the $4,500 subsequently paid in compromise of the judgment referred to. On the 31st day of March, 1923, however, and just fifteen days after the payment of the $4,500, the plaintiff filed an amended income tax return for the calendar year 1920, showing the $4,500 so paid as additional cost of coal removed and sold during the calendar year 1920. The allowance of this $4,500 as additional cost in the mining and selling of coal for the year 1920 would result in reducing plaintiff's income tax for that year in the sum of $2,070, and, therefore, at the same time the amended return was filed, plaintiff filed a claim for a credit of $2,070 for the calendar year 1920, and asked that same be applied against its income tax liability for the year 1922. This credit was denied.

If plaintiff is entitled to have deducted the $4,500 from its gross income for the year 1920, in determining its taxable net income for that year, the authority therefor must be found in section 234 of the Revenue Act of 1918 (40 Stat. 1077), which in part provides as follows:

"Sec. 234. (a) That in computing the net income of a corporation subject to the tax imposed by section 230 there shall be allowed as deductions:

"(1) All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including a reasonable allowance for salaries or other compensation for personal services actually rendered, and including rentals or other payments required to be made as a condition to the continued use or possession of property to which the corporation has not taken or is not taking title, or in which it has no equity."

The record in this case conclusively establishes the fact that the $4,500 paid by the plaintiff in March, 1923, was in fact paid for the coal taken from under the Cullen graveyard by the plaintiff during the calendar years 1919 and 1920. It, therefore, just as truly represented a part of the cost to the plaintiff of mining and selling the coal so removed as the royalty paid on the coal taken from under the leasehold represented part of the cost of mining and marketing that coal. The money realized from the coal mined and sold from under the graveyard tract in 1920 was reported as a part of plaintiff's gross income for the taxable year 1920, just as were the proceeds of the coal mined and sold from under the leasehold. Inasmuch as its books were regularly kept on an accrual basis,

plaintiff was entitled, by virtue of sections 232 and 212 of the Revenue Act of 1918, to have its net income computed upon the same basis. Therefore, in arriving at its taxable net income for the year 1920, plaintiff was entitled to deduct from its gross income, not only the ordinary and necessary expenses actually paid during the taxable year in the production of its gross income, but also any ordinary and necessary expenses incurred for that purpose during the taxable year, irrespective of when such expense was actually paid. The word "incurred," as used in that part of section 234 above quoted, under a familiar rule of statutory construction, must be given its ordinary and usual meaning. The word "incur" is ordinarily understood to mean to become liable for. One becomes liable for the payment of money when all the essential acts and happenings necessary to fix liability upon the person to be charged have been done and have transpired. Therefore, the minute the plaintiff removed any coal from under the graveyard it became liable for the market value of the coal, if it was removed willfully, or for the usual and customary royalty thereon, if it was removed unintentionally or through mistake. To me it seems immaterial that at the time of the removal the plaintiff did not know that it was removing Cullen's coal. It likewise seems immaterial that it did not know, during the taxable year 1920, the amount of Cullen's coal which it had removed that year. These facts could be ascertained and made certain in a subsequent accounting between the interested parties, or in a suit brought for the purpose of recovering for the coal thus removed. That which could thus be made certain must be regarded as being certain, as of the date the coal was removed.

I am therefore of the opinion that the $4,500 paid Cullen in 1923 was, to the extent that Cullen's coal was mined in 1920, a necessary and ordinary expense incurred in 1920 by the plaintiff in the prosecution of its business, within the meaning of section 234 of the Revenue Act of 1918. The contract of settlement under which the $4,500 was paid does not specifically state how much of it was paid for coal removed in 1920, but the record satisfactorily shows that, of the total amount removed from under the graveyard, seventy-one per cent. of it was removed in 1920. I think, therefore, substantial justice will be done by holding that seventy-one per cent. of the $4,500 was an ordinary and necessary expense incurred in 1920 in the production

of the income for that year. I therefore hold that $3,195 was an ordinary and necessary expense incurred by the plaintiff in the mining and marketing of its coal in the year 1920, and that this sum should have been deducted from its gross income for that year in arriving at its taxable net income.

A judgment and findings of fact in line with this opinion may be prepared and presented for entry.